## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 43233

| | |
|---|---|
| IN THE MATTER OF: JOHN DOE, A Child Under Eighteen (18) Years of Age (2015-07).<br>-------------------------------------------------------<br>JOHN DOE I,<br><br>　　　Petitioner-Respondent,<br><br>v.<br><br>JOHN DOE II,<br><br>　　　Respondent-Appellant. | Boise, September 2015 Term<br><br>2015 Opinion No. 110<br><br>Filed: November 25, 2015<br><br>Stephen Kenyon, Clerk |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Elmore County.  Hon. George G. Hicks, Magistrate Judge.

The judgment of the magistrate court is _vacated_ and the case is _remanded_ for proceedings consistent with this opinion.

Ratliff Law Offices, Chtd., Mountain Home, for appellant.

John Doe I, United States Air Force, pro se respondent.

---

ON THE BRIEFS

HORTON, Justice.

John Doe II appeals the termination of his parental rights to his biological child, H.T. The magistrate court in Elmore County terminated John Doe II's parental rights and allowed John Doe I to adopt H.T. John Doe II argues that John Doe I lacked standing to petition for termination of his parental rights and the magistrate court's decisions were not supported by clear and convincing evidence. We vacate the judgment of the magistrate court and remand for further proceedings consistent with this opinion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The minor at issue, H.T., is the child of John Doe II and Jane Doe. John Doe II and Jane Doe were married around March of 2002 and were divorced early the following summer. H.T. was born in 2002. John Doe II was incarcerated in 2003, when H.T. was about sixteen months old. John Doe II is serving a sentence of twenty-four years to life and is presently being held in

1

the Attica Correctional Facility in New York. The earliest that John Doe II will be eligible for parole is December 12, 2028.

In 2005, Jane Doe met John Doe I. They married in 2008. John Doe I is employed by the United States Air Force and has been with the Air Force for the past eighteen years. Jane Doe also serves in the Air Force. H.T. resides with John Doe I and Jane Doe, who are presently stationed overseas.

Jane Doe testified that John Doe II had minimal, infrequent contact with her and H.T. between 2002 and 2015. That contact included a few days together after the birth of H.T. in 2002, a visit with John Doe II in a correction facility in New York in 2004, some pictures of H.T. that Jane Doe sent to John Doe II in prison in 2006, some written correspondence between John Doe II and Jane Doe between 2006 and 2011, and most recently, two letters sent to Jane Doe's Idaho residence, one of which was addressed to H.T. John Doe II never sent H.T. birthday cards or Christmas presents. The Air Force has required Jane Doe and John Doe I to move frequently. Jane Doe did not regularly provide John Doe II with updated contact information for her and H.T. following these moves.

Jane Doe has never received child support from John Doe II. Representing herself, Jane Doe obtained a divorce from John Doe II following his imprisonment. She did not seek an award of child support and thus, there is no court order regarding child support.

Acting *pro se*, on October 14, 2014, John Doe I filed a petition to terminate John Doe II's parental rights based on abandonment and to adopt H.T. H.T. and Jane Doe consented to the adoption. Trial on the petition was eventually set for April 17, 2015.

On March 23, 2015, John Doe II filed a Motion to Dismiss for Lack of Jurisdiction/Standing. The magistrate court denied the motion finding that John Doe I acted *in loco parentis* or had a legitimate interest and had standing to petition for termination of John Doe II's parental rights.

On April 17, 2015, following trial, the magistrate court found that it was in H.T.'s best interest to terminate John Doe II's parental rights. On April 21, 2015, the magistrate court filed a Memorandum Decision Terminating Parental Rights, Order Terminating Parental Rights, and a Decree of Adoption. On June 2, 2015, the magistrate court filed its judgment. John Doe II timely appealed.

## II. STANDARD OF REVIEW

"The trial court must find that grounds for terminating parental rights have been proved by clear and convincing evidence." *Dep't of Health & Welfare v. Doe*, 149 Idaho 207, 210, 233 P.3d 138, 141 (2010); *see also* I.C. § 16-2009. "Clear and convincing evidence is evidence that indicates the thing to be proved is highly probable or reasonably certain." *In re Doe (2014-17)*, 157 Idaho 694, 699, 339 P.3d 755, 760 (2014). "This Court must 'conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment, as the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.' " *In re Doe (2014-23)*, 157 Idaho 920, 923, 342 P.3d 632, 635 (2015) (quoting *Doe v. Doe*, 150 Idaho 46, 49, 244 P.3d 190, 193 (2010)).

This Court "will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision." *In re Doe*, 157 Idaho at 699, 339 P.3d at 760 (quoting *Idaho Dep't Health & Welfare v. Doe*, 150 Idaho 36, 41, 244 P.3d 180, 185 (2010)). "Substantial, competent evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*.

## III. ANALYSIS

### A. John Doe II has waived his standing argument.

Idaho Code section 16-2004 provides that a petition for the termination of parental rights may be filed by: (a) either parent when termination is sought with respect to the other parent; (b) the guardian of the person or the legal custodian of the child or person standing *in loco parentis* to the child; (c) an authorized agency; or (d) any other person possessing a legitimate interest in the matter.

The magistrate court held that John Doe I had standing under part (a) as a person acting *in loco parentis* or, alternatively, had standing under part (d) as an individual who had a legitimate interest in the matter. The magistrate court based its decision on the contents of the file and noted the long relationship between John Doe I and H.T.'s biological mother, Jane Doe.

John Doe II asserts that the magistrate court erred in ruling that John Doe I had standing *in loco parentis* because the magistrate court's decision was not supported by clear and convincing evidence. John Doe II has not advanced any argument regarding the magistrate

3

court's determination that John Doe I had standing as a person having a legitimate interest in the matter.

"This Court has consistently followed the rule that it 'will not review the actions of a trial court, unless the action has been listed as an issue on appeal, especially where no authorities are cited and no argument is contained in the appellate briefs.' " *Andersen v. Prof'l Escrow Servs., Inc.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005) (quoting *Sun Valley Shopping Center, Inc. v. Idaho Power Co.*, 119 Idaho 87, 93, 803 P.2d 993, 999 (1991)). "When a decision is 'based upon alternative grounds, the fact that one of the grounds may be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the other grounds.' " *Id.* at 746, 118 P.3d at 78 (quoting *MacLeod v. Reed*, 126 Idaho 669, 671, 889 P.2d 103, 105 (Ct. App. 1995)). Because John Doe II has failed to present any argument that the magistrate court erred when it concluded that John Doe I had standing under of Idaho Code section 16-2004(d), we do not reach his claim that the magistrate erred by determining that John Doe I had standing to petition for termination of his parental rights.

**B. The inconsistency between the magistrate court's oral findings of fact and written conclusions of law require this Court to vacate the order terminating John Doe II's parental rights.**

This Court has consistently held that "each parent has a fundamental liberty interest in maintaining a relationship with his or her child." *Idaho Dep't of Health & Welfare*, 150 Idaho at 41, 244 P.3d at 185. Thus, "[g]rounds for termination of parental rights must be shown by clear and convincing evidence. . . ." *Id.*

John Doe I's petition asserted abandonment as the basis for termination of John Doe II's parental rights. On appeal, John Doe II argues that the magistrate court's written decision evinces a failure to evaluate the evidence presented at trial and thus, it cannot be said that the magistrate's decision was based upon clear and convincing evidence. We find that the magistrate's written decision is inconsistent with its oral statements and the trial judge's manifest abdication of his duties in a case such as this requires that the order terminating John Doe II's parental rights be vacated.

Idaho Code section 16-2002(5) defines abandonment as follows:

"Abandoned" means the parent has willfully failed to maintain a normal parental relationship including, but not limited to, reasonable support or regular personal contact. Failure of the parent to maintain this relationship without just cause for a

4

period of one (1) year shall constitute prima facie evidence of abandonment under this section. . . .

"No hard-and-fast rule controls the question of whether a parent has abandoned his or her child; instead, each case must be decided on its own particular facts. No universally applicable normal parental relationship exists; whether such relationship exists depends on the circumstances of each case." *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006) (internal citations and quotations omitted). Nevertheless, the statute unambiguously requires that the failure to maintain a normal parental relationship be willful.

> At the conclusion of trial, the magistrate stated:
>
> [John Doe II] is the biological father of [H.T.] and so, um, I can't find in this particular case that [John Doe II] has intentionally tried to abandon or—or has not intentionally—I can't find that he's intentionally tried not to have a father-son or parental relationship with his son.
>
> Instead, the magistrate found that John Doe II:
>
> really never has had any kind of a relationship with [H.T.] because he's been in prison and that his uh, chances of having any kind of normal relationship with him um, are slim and none because he's going to be in prison for at least another twelve or thirteen years it appears at a minimum. And so, I will find that the—that the Petitioner in this case has indeed um, met the burden even though it is a high burden ah that it will be in the best interest of both parent and child under the circumstances because of the incarceration of that biological father….

Thus, it is clear that the magistrate found that John Doe I had failed to meet his burden of proving willful abandonment and instead found that termination should be granted based upon John Doe II's past and future incarceration. The latter, of course, may be ground for termination of parental rights, provided that such termination is in the best interests of the minor child. I.C. § 16-2005(1)(e).[1]

The difficulty presented by this appeal is that the trial judge's oral pronouncement is contradicted by his subsequent memorandum decision. The memorandum decision purports to find that John Doe II "has abandoned the child by his willful failure to maintain a normal parental relationship with the child." The contradiction in findings is quite evidently the result of the trial judge's willingness to let a *pro se* litigant do his job for him.

---

[1] Idaho Code section 16-2005(1)(e) provides that an order of termination may be entered when the court "finds that termination of parental rights is in the best interests of the child" and that "[t]he parent has been incarcerated and is likely to remain incarcerated for a substantial period of time during the child's minority."

We note that the entirety of the trial judge's efforts in preparing "his" memorandum decision were: (1) writing the case number in the caption; (2) striking the word "ORDER" from the caption and substituting the words "MEMORANDUM DECISION" by handwritten interlineation; (3) filling in the blank for the date of hearing on the petition for termination of parental rights with "04/17/2015";[2] (4) dating his signature; and (5) signing the document.

The fundamental divergence between the trial court's oral pronouncement and written decision require us to vacate the order terminating John Doe II's parental rights. This matter is remanded with directions for the magistrate to prepare new findings of fact and conclusions of law.

Our decision today is not intended to suggest that there is no basis for terminating John Doe II's parental rights or that John Doe I should not be permitted to adopt H.T. Instead, this decision is entirely driven by a fundamental failure by the trial judge to fulfill his duties in such a case.[3]

## IV. CONCLUSION

We vacate the order terminating John Doe II's parental rights to H.T. and the Decree of Adoption. This case is remanded to the magistrate court for further proceedings consistent with this opinion.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.

---

[2] There is some indication that the magistrate read at least this portion of his decision. He supplied the date of the hearing as dictated by the form, i.e., supplying the date in a (mm/dd/yyyy) format.

[3] The record before this Court and this decision will be forwarded to the Judicial Council for review.

6